

NUMBER 13-07-093-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

NORTHFIELD INSURANCE COMPANY,                    Appellant,

v.

NABORS CORPORATE SERVICES,
INC., F/K/A POOL OFFSHORE
SERVICES,                                        Appellee.

On appeal from the 157th District Court of Harris County, Texas.

# MEMORANDUM OPINION

**Before Justices Yañez, Benavides, and Vela
Memorandum Opinion by Justice Yañez**

This appeal involves a claim for payment of attorneys' fees arising from an

indemnity dispute. By two issues, appellant, Northfield Insurance Company ("Northfield"),

contends the trial court erred in granting summary judgment in favor of appellee, Pool Company Texas, Ltd. ("Pool").[1] Specifically, Northfield contends that: (1) Pool breached its mutual indemnity agreement with Northfield's insured and third-party defendant, Abraxas Petroleum Company ("Abraxas"), by suing Abraxas for reimbursement, and (2) Northfield is entitled to attorneys' fees it incurred in the instant suit. We affirm the summary judgment in favor of Pool.

## Background

As Pool notes, the facts and course of proceedings in this case are "best described as circuitous." In an earlier related appeal involving the parties,[2] the Fourteenth Court of Appeals set out the relevant facts, which we incorporate here.

> In 1997, Abraxas hired Pool to perform work on an oil and gas lease owned and operated by Abraxas. As is customary in the oil and gas industry, Abraxas and Pool entered into a Master Service Agreement (the "Agreement") which contained, in part, mutual indemnity provisions whereby each party agreed to indemnify the other for any claims or causes of action, without limit, for any injuries or death suffered by their respective employees. In the Agreement, each party also agreed to acquire insurance to cover these indemnity obligations[3] in accordance with the safe harbor provisions of the [Texas Oilfield Anti-Idemnity Act ("TOAIA")][4]. Pool's general liability

---

[1] Although this case is styled Nabors Corporate Services, Inc. f/k/a Pool Offshore Services, the parties have stipulated that "Pool Company Texas Ltd." is substituted for "Nabors Corporate Services, Inc. f/k/a Pool Offshore Services" in the record. We refer to appellee as "Pool."

[2] *Nabors Corporate Servs. v. Northfield Ins. Co.*, 132 S.W.3d 90 (Tex. App.–Houston [14th Dist.] 2004, no pet.).

[3] The Agreement also required, with respect to mutual indemnities, that each party name the other as an additional insured and their respective insurers were to waive any rights of subrogation.

[4] TEX. CIV. PRAC. & REM. CODE [ANN.] § 127.005 [(Vernon 2005)] (excluding from the purview of the TOAIA mutual indemnity agreements providing that the parties agree to support the indemnity obligations with insurance).

2

insurer was Reliance Insurance Company ("Reliance")[5] and Abraxas was insured by Northfield.

In 1999, a Pool employee, Michael Carter, was fatally injured. Carter's heirs and estate filed suit (the "Carter litigation") against Abraxas, and other defendants not parties to this appeal, asserting negligence claims. When Abraxas presented the claim to Northfield, Northfield hired counsel to represent Abraxas; counsel, in turn, contacted Pool and demanded Pool defend and indemnify Abraxas in accordance with the Agreement. Pool agreed, subject to its right under Texas law to deny indemnification for any grossly negligent conduct by Abraxas or any award for punitive damages. Pool then hired counsel to defend Abraxas.

In September 2001, the Carter litigation was settled on behalf of Abraxas for $ 1,545,000.[6] However, prior to funding the settlement, Pool's insurer, Reliance, became insolvent.[7] Suit was filed by the Carter plaintiffs against Abraxas to enforce the settlement agreement, and Abraxas looked to Pool by virtue of the indemnity provision contained in the Agreement. Pool contributed $ 1,000,000 to the settlement by Abraxas, reserving all rights and causes of action, then demanded reimbursement from Northfield. Consequently, Northfield filed this declaratory judgment action, asserting it did not owe any reimbursement to Pool. Pool filed counterclaims against Northfield and third-party claims against Abraxas,[8] alleging both parties had violated the [Texas Property and Casualty Insurance and Guaranty Act] and asserting claims for indemnity and unjust enrichment against both parties. Northfield filed a "Motion to Dismiss and/or Summary Judgment," requesting the trial court dismiss Pool's claims against Abraxas and Abraxas's claims against Northfield in the event Abraxas should be held liable to Pool for any reimbursement.

The trial court signed a final judgment granting Northfield's motion and (1) dismissing with prejudice, Pool's claims against Abraxas and Northfield; (2) dismissing without prejudice, Abraxas's counterclaims against Pool; and (3) dismissing as moot, Abraxas's cross-claims for reimbursement against Northfield. The trial court severed all other remaining claims to permit appeal

---

[5] Pool's policy with Reliance had a $ 1,000,000 primary liability limit.

[6] Specifically, as stated in the settlement agreement, the claim was settled on behalf of "Abraxas and its insurers."

[7] Reliance was designated as an impaired insurer on October 5, 2001.

[8] Abraxas filed counterclaims against Pool and also filed a separate lawsuit against Northfield.

3

of the judgment.[9]

The Fourteenth Court affirmed the trial court's summary judgment in favor of Northfield and Abraxas, holding that the TOAIA (1) did not alter Pool's indemnity obligation, just because its insurer became insolvent, and (2) did not require Abraxas to reimburse Pool for the money it paid to settle the underlying claim.[10]

The claims in the present case were abated while the severed claims in *Nabors v. Northfield* were appealed to the Fourteenth Court. Northfield's claims in the present case are: (1) that by failing to defend Abraxas, Pool breached its Agreement with Abraxas; (2) alternatively, that Northfield is entitled to contribution from Pool under chapter 33 of the civil practice and remedies code[11] for any sums it may be required to pay to Abraxas; and (3) that it is entitled to recover from Pool its own attorneys' fees and those incurred by Abraxas.[12]

On November 22, 2005, Pool filed an amended traditional motion for summary judgment,[13] in which it asserted that it was entitled to summary judgment:

> on Northfield's claims for contribution and indemnity because there is no legal basis upon which Pool is required to indemnify Northfield for Northfield's conduct in refusing to defend and indemnify Abraxas, or for the attorneys' fees incurred by Abraxas in defending itself against Pool's

---

[9] *Northfield Ins. Co.*, 132 S.W.3d at 93-94 (internal footnotes as appear in original).

[10] *Id.* at 99.

[11] *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 33.011-.017 (Vernon 2008).

[12] The record contains a settlement agreement between Northfield and Abraxas, whereby the parties (1) dismiss all claims against each other, (2) Northfield pays Abraxas $97,500, and (3) Abraxas assigns any claims it has against Pool to Northfield. Northfield seeks recovery of $283,782.99 in attorneys' fees incurred by Abraxas and recovery of its own attorneys' fees in the amount of $85,251.57.

[13] *See* TEX. R. CIV. P. 166a(c).

4

compulsory claims in Nothfield's declaratory judgment action. Moreover, Northfield is not entitled to contribution pursuant to Chapter 33 of the Texas Civil Practice and Remedies Code.

Likewise, Pool is entitled to summary judgment as a matter of law on Abraxas' claims because the attorneys' fees that were incurred by Abraxas were not within the scope of the indemnity agreement between Abraxas and Pool, and the attorneys' fees Abraxas incurred are not recoverable from Pool as damages. Additionally, Abraxas is not entitled to reimbursement from Pool for any monies it paid to settle its gross negligence exposure in the *Carter* litigation because Pool's indemnity obligation was limited to $1,000,000, and Pool satisfied its obligation when it tendered $1,000,000 to settle the *Carter* litigation. Additionally, Abraxas accepted Pool's qualified offer to defend and indemnify Abraxas in the *Carter* litigation for all claims except gross negligence claims or punitive damages, and has therefore, waived any claims for reimbursement.

Pool attached the following summary judgment evidence:

(1) the Master Service Agreement;

(2) February 8, 1999 correspondence from Pool's counsel to Abraxas's counsel;

(3) an April 1, 2002 letter from Pool's counsel to Abraxas's and Northfield's counsel regarding Pool's right to seek reimbursement of settlement funds;

(4) an April 9, 2002 letter from Abraxas's and Northfield's counsel to Pool's counsel regarding the same subject;

(5) the Fourteenth Court's opinion in *Nabors Corporate Servs. v. Northfield Ins. Co.*;

(6) Abraxas's First Amended Cross-Claim against Northfield;

(7) Northfield's Third-Party Petition against Pool; and

(8) Abraxas's Alternative Cross-Claim against Pool.

On December 8, 2005, Northfield filed a response to Pool's amended motion for summary judgment.

On November 30, 2005, Northfield filed an amended traditional motion for summary

5

judgment,[14] in which it noted that (1) it had purchased an assignment of all of Abraxas's claims against Pool, and (2) Abraxas had dismissed all its claims against Northfield.[15] In its motion, Northfield argued that by suing Abraxas for reimbursement, Pool breached the Agreement between Pool and Abraxas. Northfield also argued that it was entitled to recover Abraxas's attorneys' fees and its own attorneys' fees from Pool .[16] As evidence in support of its motion, Northfield incorporated the evidence attached to its August 17, 2004 motion, which included: (1) Pool's answer and counter-claims against Northfield in the severed litigation; (2) Northfield's insurance policy with Abraxas; (3) letters between Northfield and Abraxas regarding Northfield's alleged duty to defend Abraxas in the claims brought by Pool; (4) a copy of the *Carter* plaintiffs' petition; (5) a copy of Abraxas's cross-claim against Northfield, alleging breach of its insurance policy with Northfield; (6) Abraxas's counter-claim against Pool, alleging that Pool breached the Agreement; (7) copies of invoices for attorneys' fees submitted to Abraxas; (8) a copy of the petition to enforce the settlement in the *Carter* litigation; (9) a copy of Abraxas's third-party claims against Pool, alleging breach of Pool's indemnity obligations under the Agreement; (10) the *Carter* plaintiffs' motion for summary judgment for enforcement of the settlement agreement; and (11) a letter confirming Abraxas's agreement to pay $1,545,000 in settlement of the *Carter* litigation. On December 29, 2005, Pool filed a response to

_____

[14] *See* TEX. R. CIV. P. 166a(c).

[15] As summary judgment evidence, Northfield attached its settlement agreement with Abraxas.

[16] We note that in its August 1, 2005 motion for summary judgment, prior to its settlement with Abraxas, Northfield reserved the right to contest the reasonableness of Abraxas's fees, stating that such fees were "grossly exaggerated, and deal with numerous tasks that had nothing to do with defending the case brought by Nabors/Pool against Abraxas." In its November 30, 2005 amended motion, Northfield also stated that if its motion is granted, it will submit fee affidavits establishing the amount of its attorneys' fees.

6

Northfield's motion for summary judgment.

On September 21, 2006, the trial court denied Northfield's Amended Motion for Summary Judgment, and on November 15, 2006, entered a take-nothing judgment in Pool's favor on all claims asserted against it by Northfield and Abraxas.

**Standard of Review**

We review the trial court's grant of summary judgment de novo.[17] When both parties move for summary judgment, we indulge all reasonable inferences and resolve all doubts in favor of the losing party.[18] When both parties move for summary judgment on the same issues and the trial court grants one motion and denies the other, the reviewing court considers the summary-judgment evidence presented by both sides, determines all questions presented, and if it determines the trial court erred, renders the judgment the trial court should have rendered.[19]

When the trial court does not specify the basis for its ruling, it is the appellant's burden on appeal to show that none of the independent grounds that were asserted in support of summary judgment is sufficient to support the judgment.[20] Thus, when the trial court's order granting summary judgment does not specify the grounds on which it was granted, we will affirm the summary judgment if any of the theories advanced support the

---

[17] *Joe v. Two Thirty Nine J. V.*, 145 S.W.3d 150, 156-57 (Tex. 2004); *Branton v. Wood*, 100 S.W.3d 645, 646 (Tex. App.–Corpus Christi 2003, no pet.).

[18] *Dallas, Garland, & Ne. R.R. v. Hunt County*, 195 S.W.3d 818, 820 (Tex. App.–Dallas 2006, no pet.).

[19] *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005).

[20] *Coffey v. Singer Asset Fin. Co.*, 223 S.W.3d 559, 562-63 (Tex. App.–Dallas 2007, no pet.) (citing *Star-Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex. 1995)).

judgment.[21]

## Discussion

The trial court's order denying Northfield's motion for summary judgment does not specify the basis for its ruling. Thus, Northfield has the burden on appeal to show that none of the grounds asserted in support of Pool's motion for summary judgment is sufficient to support the judgment.[22]

In Northfield's amended motion, it moved the trial court to hold that Pool breached its Agreement with Abraxas by suing it for reimbursement of the funds Pool paid in settlement of the *Carter* litigation. Northfield argued that the *Nabors* court determined that Pool's Agreement with Abraxas was valid.[23] Thus, Pool's decision to sue Abraxas was "an obvious breach of the indemnity agreement." Northfield also argued that it is entitled to recover (1) its own attorneys' fees, and (2) pursuant to its purchase of the assignment of Abraxas's claims, attorneys' fees incurred by Abraxas.

In its first issue, Northfield argues that even though Pool eventually funded the settlement made on Abraxas's behalf, it initially refused to do so, and thereby breached the Agreement with Abraxas. Northfield argues that the Agreement between Pool and Abraxas contemplates that litigation may be necessary to determine the extent of the indemnity, and thus provides that legal costs involved with enforcing the indemnification provisions are recoverable as damages. The provision of the Agreement cited by

---

[21] *Browning v. Prostok*, 165 S.W.3d 336, 344 (Tex. 2005) (citing *Provident Life Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003)); *Coffey*, 223 S.W.3d at 563.

[22] *See Coffey*, 223 S.W.3d at 562-63.

[23] *See Nabors*, 132 S.W.3d at 99.

8

Northfield states: "In the event one party must bring legal action in order to enforce an indemnification, all such legal costs shall be included as part of the indemnification."

Northfield also argues that Abraxas's attorneys' fees are recoverable under chapter 38 of the civil practice and remedies code[24] and under the Uniform Declaratory Judgment Act ("the DJA").[25] Northfield points to the affidavit of Michael Orlando, counsel for Abraxas, as evidence in support of the claim for attorneys' fees in the amount of $283,782.99.

By its second issue, Northfield argues that it is entitled to recover its own attorneys' fees pursuant to the DJA;[26] Northfield argues that it sought a declaratory judgment that Pool was responsible for funding the *Carter* settlement, and the *Nabors* court so held. Northfield points to the affidavit of John C. Tollefson, which states that Northfield's attorneys' fees were $85,251.57.[27]

In its response to Northfield's amended motion, Pool argued that it satisfied its obligations under the Agreement by funding the *Carter* settlement, and reserved its right to seek reimbursement from Abraxas and Northfield. In response to Northfield's claim that Pool's third-party claim against Abraxas constituted a breach of the Agreement, Pool made several arguments. First, Pool argued that when Northfield sued Pool, it was forced to bring Abraxas into the litigation, because Northfield was asking the trial court to construe

---

[24] *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 38.001-.006 (Vernon 2008).

[25] *See id.* § 37.009 (Vernon 2008).

[26] *See id.*

[27] We note that the record reference in Northfield's brief to the affidavit of John C. Tollefson refers to an exhibit attached to Northfield's Response to Pool's Amended Motion for Summary Judgment; the affidavit was not submitted in support of Northfield's amended motion for summary judgment.

the Agreement between Pool and Abraxas, and Abraxas's interests would thereby be affected by the court's decision. Second, Pool argued it was entitled to pursue its reimbursement claims because the parties agreed in writing that Pool preserved its right to seek reimbursement of the settlement funds.[28]

Pool also argued that in *Frank's Casing*, the Texas Supreme Court found that a party is entitled to settle with an injured party and subsequently challenge coverage and seek reimbursement.[29] Pool cited the supreme court's 2005 opinion in *Frank's Casing*, which was subsequently withdrawn and a new opinion issued, as explained in a recent law review article:

> In a much anticipated opinion, *Excess Underwriters at Lloyd's, London v. Frank's Casing Crew & Rental Tools, Inc.*, the Texas Supreme Court revisited the issue of whether an insurer is entitled to reimbursement from its insured of amounts it paid to settle third-party claims against the insured when it later determined that those claims are not covered under the policy. The supreme court first addressed this issue in 2000, in *Texas Association of Counties County Government Risk Management Pool v. Matagorda County*,[30] holding that an insurer may seek reimbursement only if it "obtains the insured's clear and unequivocal consent to the settlement and the insurer's right to seek reimbursement." In its original opinion in *Frank's Casing*, the supreme court had "clarified" *Matagorda County* and had

---

[28] The record contains a letter dated April 1, 2002, from Pool's counsel to Abraxas's and Northfield's counsel, stating that Pool will advance the $1 million to fund the settlement "subject to agreement by Abraxas and its insurers, including but not limited to Northfield Insurance Company . . . that all rights, remedies, causes of action, limitations, etc. are preserved by and between [Pool] and its related companies, insurers and/or re-insurers . . . . More specifically, of course, we are preserving all rights and remedies to seek reimbursement of all or part of the settlement funds without prejudice to any arguments that Pool is not, and shall not be, liable for any amount previously agreed upon by Abraxas and/or Reliance . . . ." A responsive letter dated April 9, 2002, to Pool's counsel acknowledges that Pool is advancing the $1 million, subject to the agreement that all rights, remedies, causes of action, etc. are preserved by and between Abraxas, Northfield, and Pool. The letter is signed by counsel and/or representatives of Abraxas and Northfield.

[29] *See Excess Underwriters at Lloyd's London v. Frank's Casing Crew & Rental Tools, Inc.*, 246 S.W.3d 42, 46-48 (Tex. 2008) (op. on reh'g).

[30] *Tex. Ass'n of Counties County Gov't Risk Mgmt. Pool v. Matagorda County*, 52 S.W.3d 128 (Tex. 2000).

expanded the insurer's right of reimbursement to include the additional circumstances: (1) when the insured demands that the insurer accept a settlement offer that is within policy limits, or (2) when the insured expressly agrees that the settlement offer should be accepted.

The supreme court granted rehearing in *Frank's Casing* on January 6, 2006, and on February 1, 2008, withdrew its prior opinion and issued a new opinion. The supreme court expressly declined to overrule *Matagorda County*, reiterating that in weighing the varying risks surrounding settlement offers when coverage is disputed, "insurers, on balance, are better positioned to handle them 'either by drafting policies to specifically provide for reimbursement or by accounting for the possibility that they may occasionally pay uncovered claims in their rate structure.'"

The supreme court next addressed whether the case was sufficiently distinguishable from *Matagorda County* to justify an exception to the *Matagorda County* rule and thereby permit reimbursement based on the insured's implied consent. The underwriters emphasized that (1) they were excess carriers who did not have a duty to defend or otherwise have unilateral control over settlement, (2) the policy prohibited settlement without the insured's consent, and (3) the insured had demanded that the underwriters settle the claim. Reasoning that "none of these distinctions alleviates the concerns that drove the supreme court's analysis in *Matagorda County*," the supreme court declined to recognize an exception to the *Matagorda County* rule and accordingly refused to find an implied-in-fact agreement. The supreme court also refused to recognize a reimbursement right under the equitable theories of quantum meruit and assumpsit.

Consequently, after *Frank's Casing*, an insurer has a right of reimbursement from its insured only if: (1) the policy specifically provides for reimbursement, or (2) the insured clearly and unequivocally consents to the settlement and the insurer's right to seek reimbursement.[31]

Here, Pool's claim for reimbursement of the settlement funds against Abraxas was based on its argument that the indemnity provision in the Agreement was void due to the insolvency of Reliance.[32] The *Nabors* court rejected Pool's argument, finding that Pool

---

[31] J. Price Collins, Ashley E. Frizzell, and Omar Galicia, *Insurance Law*, 61 SMU L. Rev. 877 (2008) (internal citations omitted).

[32] *See Nabors*, 132 S.W.3d at 95.

bore the risk of any loss associated with its underlying insurance obligations.[33] Thus, unlike the issue in *Frank's Casing* and *Matagorda County*, Pool's claim was not seeking reimbursement of settlement costs for an *uncovered* claim; rather, its claim was to determine whether Reliance's insolvency altered its indemnity obligation—and the *Nabors* court found it did not.[34] Moreover, the April 1 and April 9, 2002 letters demonstrate that the parties agreed that Pool preserved the right to seek reimbursement for all or part of the settlement funds. We reject Northfield's argument that by exercising a right that the parties expressly agreed to, Pool "breached" its Agreement with Abraxas.

We are also unpersuaded by Northfield's argument that it is entitled to recover Abraxas's attorneys' fees and its own attorneys' fees pursuant to the provision in the Agreement that "[i]n the event one party must bring legal action in order to enforce an indemnification, all such legal costs shall be included as part of the indemnification." Pool argues that no "legal action" was required to "enforce an indemnification" because Pool had already satisfied its indemnity obligation by paying $1 million toward the funding of the settlement. Northfield's declaratory judgment action was in the nature of a defense: that it did not owe Pool any reimbursement.[35] We decline to construe Northfield's declaratory judgment action as an action to "enforce an indemnification" within the meaning of the Agreement. We overrule Northfield's first issue.

We next address Northfield's claim that Abraxas's attorneys' fees are recoverable

---

[33] *See id.* at 98.

[34] *See id.*

[35] *See id.* at 93.

12

under chapter 38 of the civil practice and remedies code[36] and under the DJA.[37]  By its second issue, Northfield claims it is entitled to recover its own attorneys' fees under the DJA.

Section 38.001(8) of the civil practice and remedies code permits an award of attorney's fees for a suit based on a written contract.[38]  However, "[t]o recover attorney's fees under [section] 38.001, a party must (1) prevail on a cause of action for which attorney's fees are recoverable, and (2) recover damages. . . ."[39]  Attorneys' fees are in the nature of costs, not damages.[40]  Here, Abraxas asserted a breach of contract claim against Pool in Pool's claim for reimbursement from Abraxas of the $1 million in settlement funds. The *Nabors* court held that Abraxas was not required to reimburse Pool.[41]  Therefore, Abraxas did not recover any "damages," and is therefore not entitled to attorneys' fees under section 38.001.

Northfield also claims it is entitled to recover Abraxas's attorneys' fees under the DJA.[42]  In a declaratory judgment action, the decision to grant or deny attorneys' fees is

---

[36] *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 38.001-.006.

[37] *See id.* § 37.009.

[38]  *See id.* § 38.001(8).

[39] *Green Int'l , Inc. v. Solis*, 951 S.W.2d 384, 390 (Tex. 1997); *Alma Group, L.L.C. v. Palmer*, 143 S.W.3d 840, 845-46 (Tex. App.–Corpus Christi 2004, pet. denied); *see Mustang Pipeline Co. v. Driver Pipeline Co.*, 134 S.W.3d 195, 201 (Tex. 2004).

[40] *Alma Group, L.L.C.*, 143 S.W.3d at 846.

[41] *See Nabors*, 132 S.W.3d at 99.

[42] *See id.* § 37.009 ("In any proceeding under this chapter, the court may award costs and reasonable and necessary attorneys' fees as are equitable and just.").

13

solely within the discretion of the trial court.[43] Pool argues that Northfield, as Abraxas's assignee, is not entitled to attorneys' fees under chapter 37 because, among other reasons, Northfield did not seek any declaratory relief against Pool in this proceeding.[44] In addition, Pool argues, Abraxas did not seek any declaratory relief against Pool in this proceeding.[45] Pool contends that Northfield cannot "bootstrap" its request for declaratory relief in the severed action because that action was concluded by final judgment.[46] We agree with Pool that neither Northfield nor Abraxas asserted a request for declaratory relief against Pool; accordingly, Northfield is neither entitled to recover its own attorneys' fees, nor, as Abraxas's assignee, is it entitled to recover Abraxas's attorneys' fees under the DJA.[47] We overrule both of Northfield's issues.

## Conclusion

[43] *See id.*; *Neeley v. W. Orange-Cove Consol. Indep. Sch. Dist.*, 176 S.W.3d 746, 799 (Tex. 2005); *Wilson v. Chazanow*, 105 S.W.3d 21, 26 (Tex. App.–Corpus Christi 2002, no pet.).

[44] In Northfield's Third-Party Petition Against Pool, dated January 20, 2005, Northfield acknowledges that its declaratory judgment action against Pool is "now final" (the *Nabors* case). It notes that Abraxas's claim against Pool is a claim for attorneys' fees. Northfield's claim is a claim for indemnity or alternatively, contribution, for any sums Northfield may be compelled to pay Abraxas. The petition does not seek any declaratory relief. Similarly, Northfield's Amended Petition Against Pool, dated November 21, 2005, asserts a claim for indemnity against Pool for any sums that Northfield paid to Abraxas. Although the amended petition asserts that Northfield is entitled to recover its own attorneys' fees under chapters 37 and 38 of the civil practice and remedies code, it does not request any declaratory relief.

[45] Abraxas's Alternative Cross-Claim Against Pool, dated May 18, 2005, seeks direct recovery from Pool for any of Abraxas's claims against Northfield that are more properly asserted against Pool. The pleading does not request any declaratory relief from Pool. In Abraxas's Amended Cross-Claim Against Northfield, dated June 17, 2005, Abraxas sought declaratory relief against Northfield, seeking a declaration as to coverage under its policy with Northfield. However, because all claims between Abraxas and Northfield have been settled, Abraxas's amended cross-claim against Northfield is moot, and cannot support the award of attorneys' fees.

[46] *See Nabors*, 132 S.W.3d at 100.

[47] *See McDowell v. McDowell*, 143 S.W.3d 124, 131 (Tex. App.–San Antonio 2004, pet. denied) (reversing award of attorneys' fees to appellee where appellee had not requested declaratory judgment).

14

We affirm the trial court's order granting summary judgment in Pool's favor.

_____
LINDA REYNA YAÑEZ,
Justice

Memorandum Opinion delivered and filed
this the 29th day of May, 2009.